**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

| | | |
|---|---|---|
| **HEATHER THOMPSON,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE SCHOOL BOARD OF CHARLOTTE COUNTY, FLORIDA,**<br><br>**Defendant.** | ) | **Case No. 6:26-cv-02686** |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Heather Thompson, by and through undersigned counsel, sues Defendant, The School Board of Charlotte County, Florida ("Defendant" or "School Board"), and alleges:

1. This action arises under Title I of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§ 12111–12117 and 12203, and the Florida Civil Rights Act ("FCRA"), Fla. Stat. §§ 760.01–760.11.

2. Plaintiff alleges disability discrimination, failure to provide reasonable accommodations, failure to promote, discrimination in the terms, conditions, and privileges of employment, unlawful disclosure and mishandling of confidential disability-related medical information, and retaliation.

3. Plaintiff seeks declaratory relief, injunctive relief, back pay, front pay, compensatory damages, costs, attorney's fees, and all other available relief.

## I. Jurisdiction and Venue

4. This Court has jurisdiction over Plaintiff's ADA claims under 28 U.S.C. § 1331 and 42 U.S.C. § 12117.

5. This Court has supplemental jurisdiction over Plaintiff's FCRA claims under 28 U.S.C. § 1367 because they arise from the same nucleus of operative facts as Plaintiff's federal claims.

6. Venue is proper in this District under 28 U.S.C. § 1391 because Defendant employs Plaintiff in Charlotte County, Florida, Defendant's offices are located in Charlotte County, and a substantial part of the events giving rise to Plaintiff's claims occurred in Charlotte County.

## II. Parties

7. Plaintiff Heather Thompson is a resident of Charlotte County, Florida.

8. Defendant, The School Board of Charlotte County, Florida, is a public employer within the meaning of the ADA and the FCRA.

9. Defendant employed Plaintiff at all times material to this action and employs more than fifteen employees.

## III. Administrative Prerequisites

10. On or about August 3, 2026, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 510-2026-11290, alleging disability discrimination and retaliation.

11. Plaintiff requested that her charge be dual-filed with the Florida Commission on Human Relations.

12. The EEOC issued Plaintiff a Notice of Right to Sue dated August 3, 2026. (Ex. 1)

13. Plaintiff received the Notice of Right to Sue via the public portal the same day.

14. Plaintiff timely files this action within ninety days after receipt of the Notice of Right to Sue.

15. All conditions precedent to Plaintiff's claims have been performed, have occurred, or have been waived.

## IV. Factual Allegations

16. Defendant hired Plaintiff in or about March 2021 as a Human Resources Assistant.

17. Plaintiff was qualified to perform the essential functions of her Human Resources Assistant position, with or without reasonable accommodation.

18. Plaintiff has autism spectrum disorder and anxiety. Her disability affects, among other things, her ability to process information, communicate, concentrate, and regulate sensory overstimulation caused by sounds, lights, odors, unexpected changes, and other environmental conditions.

19. Defendant knew of Plaintiff's disability no later than February 20, 2024.

20. Plaintiff disclosed her disability, supplied supporting medical information, requested accommodations, and participated in Defendant's accommodation process.

21. Plaintiff requested, and Defendant approved or agreed to, accommodations intended to allow Plaintiff to perform her job effectively. Those accommodations included, among others:

a. advance verbal and written notice of changes to assignments, duties, instructions, and meetings;

b. advance notice before meetings involving evaluation, performance, or potential discipline;

c. communication of work-related information verbally and in writing;

d. the ability to take breaks, leave an overstimulating environment, or work remotely when necessary;

e. access to a private or single-stall restroom;

f. an office or workspace with a door; and

g. flex time to work from home;

h. the ability to have an "advocate" present in evaluation meetings, change in duty meetings, or disciplinary meetings.

22. Defendant repeatedly failed to provide, honor, or consistently implement Plaintiff's approved accommodations.

23. Defendant failed to provide Plaintiff advance verbal and written notice of changes to her work assignments, duties, processes, meetings, and expectations, including: (a) informing Plaintiff on September 30, 2024, at a meeting she understood to concern her ADA accommodations, that she was being involuntarily transferred to Transportation effective October 14, 2024; (b) reassigning another employee's substitute-coordinator duties to Plaintiff in September 2024 without notice or training; (c) removing all of Plaintiff's Human Resources system access on or about October 21, 2024, without notice; (d) adding duties to Plaintiff's workload without notice,

including sub-to-full-time begin hires, Vector Training, and all Transportation tasks and onboarding "as of today" (October 7, 2025); (e) repeatedly changing hiring, onboarding, fingerprinting, drug-screen, and checklist procedures without notice while telling Plaintiff "nothing has changed"; (f) giving Plaintiff same-day or next-day notice of meetings and events, including HR photographs (30 minutes' notice, July 8, 2025), a presentation at Transportation bidding (October 2, 2025), and a directive to report to a different work location, which was reversed 17 minutes later (July 29, 2026); (g) imposing new expectations without notice, including notifying multiple supervisors of absences (October 2025 and August 2026) and visiting three Transportation compounds weekly (2026 evaluation); and (h) recharacterizing the transfer on September 2, 2026 as an "interim workspace arrangement," and announcing changes to her work hours and reporting structure.[1]

24. Defendant excluded Plaintiff from meetings, emails, work-related communications, information, and processes necessary for her to perform her job, including: (a) excluding Plaintiff from the August 28, 2024 meeting on Transportation substitute-hiring procedures; (b) removing

[1] All adverse actions that occurred outside the statute of limitations based upon a theory of a continuing action by Defendant to discriminate and retaliate against Plaintiff and may not, in and of themselves, amount to actionable adverse actions. They are actionable, however, when taken as a whole, continuing action.

Plaintiff from Human Resources staff meetings, correspondence, the HR calendar, and the meeting roster after October 14, 2024; (c) instructing Human Resources staff to communicate with Plaintiff only through the Human Resources Director; (d) omitting Plaintiff from Human Resources team emails and events, including cubicle selection, HR photographs, and the new Director's introduction, and an HR team email about staff meetings (October 16, 2025); (e) removing Plaintiff from hiring workflows and notifications; and (f) withholding information on process changes, open enrollment, orientation, which were instead shared in meetings she did not attend; and (g) removing Plaintiff from the HR meeting roster and the HR calendar, and not disclosing the "HR Team Drive" that Defendant described as "our primary source of team information" (July 27, 2026).

25. Defendant assigned Plaintiff work or held Plaintiff responsible for work without providing her the same tools, resources, systems access, information, or support provided to similarly situated employees, including: (a) directing applicants and employees to Plaintiff for assistance while she lacked access to the systems needed to help them; (b) assigning Plaintiff onboarding, I-9, and E-Verify tasks without access to the HR shared drive or employee scans, making her dependent on other HR staff to upload documents;(c) routing badge and fingerprint requests to Plaintiff without

access to the equipment; (d) assigning Plaintiff PAF and B+ maintenance, often due the same day, without remote B+ access, VPN, or the payroll schedules provided to other HR staff; (e) assigning duties Plaintiff had never performed, or had not performed in over two years, without training; and (f) failing to provide coverage for Plaintiff's work during approved leave, then holding her responsible for work left incomplete (g) removed all access to HR systems and duties in October 2024.

26. Defendant scrutinized, criticized, or evaluated Plaintiff for alleged performance issues caused or exacerbated by Defendant's failure to accommodate her, including: (a) issuing 5-day notices and a Letter of Instruction in July–August 2024 without identifying the specific issues in advance, as her accommodation required; (b) assigning Plaintiff areas of improvement on her 2025 evaluation for functions Defendant had removed from her; (c) faulting Plaintiff for following procedures that had changed without notice; (d) citing, as the example on evaluation of Plaintiff's "unavailability," a day she was on approved leave (October 28, 2025); (e) criticizing Plaintiff on her 2026 evaluation for an "increase in an out of office work schedule," which reflected her approved accommodation, and for accessibility; Defendant removed the comment only after she grieved it; (f) documenting Plaintiff's use of her ADA accommodation as deficiencies, and

reporting her as unreachable when she was not; and (g) demanding same-day completion of work that Plaintiff could not perform while using her accommodation or approved leave.

27. Defendant failed to engage in a good-faith, continuing interactive process regarding Plaintiff's accommodation needs. Instead, Defendant informed Plaintiff that the existing interactive process was closed and that Plaintiff would need to submit new documentation and new requests to reopen it, despite Plaintiff's continuing disability-related limitations and Defendant's failure to implement effective accommodations.

28. On or about October 14, 2024, Defendant involuntarily transferred Plaintiff from her Human Resources Department at the Murdock Central Office to the Transportation Department.

29. Defendant represented that the transfer was related to construction and Plaintiff's accommodations. After the transfer, however, Defendant removed or restricted Plaintiff's Human Resources duties, access, systems, work opportunities, and responsibilities.

30. Plaintiff's supervisor(s) attempted to establish a newly-created job position and description, only for Plaintiff, as a Human Resources Assistant-Transportation.

31. Plaintiff would have been the *only* employee working in the newly-created Human Resources Assistant-Transportation position.

32. The position was ultimately withdrawn from consideration by the School Board.

33. For approximately eight months, Plaintiff lacked meaningful Human Resources duties and access to systems necessary to perform her job. Plaintiff was left without a meaningful or purposeful role for substantial portions of her workday.

34. Defendant later restored some duties and access, but Plaintiff continues to lack full access to the Human Resources systems, files, tools, or information necessary to perform all aspects of her Human Resources Assistant position, including: (a) the Human Resources shared G drive, where she has access to only two folders; her access requests have been closed without resolution; (b) remote B+ access and VPN; (c) the badge machine, secure scanning station, and fingerprint equipment; (d) the Human Resources phone line and her former extension, which were reassigned; (e) badge access to the Human Resources office; (f) hiring workflows and task views equal to those of other HR Assistants, including after her access was restricted to Transportation-only tasks on October 28, 2025; and (g) regular Human Resources meetings and communications.

35. Plaintiff's transfer, removal of duties, restriction of access, exclusion from communications, and denial of meaningful work adversely affected the terms, conditions, privileges, status, and opportunities of her employment.

36. Plaintiff applied for the following promotion opportunity(ies):

a) Position title: Analyst, Personnel; Posting or requisition number: 4151907; Date Plaintiff applied: 02/15/2023; and

b) Position title: Analyst, Data; Posting or requisition number: 4223014; Date Plaintiff applied: 06/01/2023;

c) Position title: Executive Secretary II / 2023-2024; Posting or requisition number: 4274974; Date Plaintiff applied: 06/02/2023; and

d) Position title: Specialist, Investigations; Posting or requisition number: 5781107; Date Plaintiff applied: 06/22/2026; and

e) Position title: Coordinator of Labor Relations; Posting or requisition number: 5855087; Date Plaintiff applied: 07/28/2026; and

f) Multiple positions which were not posted and instead employees were ascended into positions by management.

37. All of the employees who were assigned to the same Human Resources Assistant position as Plaintiff have been promoted since 2/15/23 and as recently as 8/2026 (with the exception of one retiree and one other).

38. Plaintiff was qualified for the positions identified above. Plaintiff possessed relevant Human Resources experience, certifications, including SHRM-CP, Specialty HR Investigations cert, Specialty Inclusive Workplace Culture Cert, People Manager Qualification, Public Notary, DOT Drug Testing Cert, and DOT Breath Alcohol Cert., and qualifications at least comparable to or greater than the individuals selected.

39. Defendant denied Plaintiff the promotion opportunities and selected other candidates, including candidates with less relevant Human Resources experience, fewer relevant qualifications, less seniority, and/or less experience with Defendant.

40. Plaintiff engaged in protected activity by requesting reasonable accommodations; reporting disability discrimination; opposing discriminatory treatment; filing internal complaints and grievances; reporting unauthorized access to her confidential disability-related information; filing administrative charges; and otherwise exercising rights protected by the ADA and FCRA.

41. After Plaintiff engaged in protected activity, Defendant increased scrutiny of Plaintiff, failed or delayed implementation of accommodations, restricted Plaintiff' duties and access, excluded her from work-related communications, denied promotion opportunities, and subjected Plaintiff to the following additional adverse actions: (a) involuntarily transferring Plaintiff after her internal complaint and her request for accommodation; (b) conditioning a pay increase and remote work on a release of liability (December 9, 2024); (c) denying Plaintiff leadership training as an "undue hardship" (September 2025); (d) demanding new medical documentation for an already-approved accommodation after she filed her FCHR petition (October 28, 2025); (e) requiring Plaintiff to use personal leave for a deposition requested by Defendant's attorney (December 2025); (f) permitting Defendant's investigator to access Plaintiff's ADA file when Plaintiff was not under investigation, and declining to take corrective action (April 2026); and (g) telling drivers, according to a report Plaintiff received, that her disability was the reason a compound door was locked (May 2026); (h) requiring Plaintiff to exhaust her sick leave and use Family and Medical Leave in place of effective accommodations, stating there was no other accommodation it was willing to provide, and conditioning remote work on a release of liability; Defendant provided accommodations that relieved her

symptoms only after she filed a complaint with the Florida Commission on Human Relations; and (i) attributing a public-records request to Plaintiff after Defendant received her EEOC Notice of Right to Sue, while she was on FMLA leave.

42. Plaintiff provided Defendant disability-related medical information in support of her accommodation requests and accommodation process.

43. Defendant maintained Plaintiff's disability-related medical information, including medical records, accommodation materials, and/or related documentation in electronic files accessible through Defendant's Human Resources systems.

44. At least three of Plaintiff's Human Resources peers accessed Plaintiff's confidential disability-related medical information without a legitimate business need to do so.

45. The unauthorized access included review of the following materials: ADA accommodation requests, granted accommodations, and subsequent medical documentation and FMLA files and documentation.

46. Plaintiff possesses access logs identifying the individuals who accessed her confidential records, the dates and times of access, and the

documents or categories of documents accessed including impersonating Plaintiff to do so.

47. Plaintiff reported the unauthorized access to Defendant, including through communications with Dr. Danielle Hudzina on or about 5/2/24.

48. After accessing or learning of Plaintiff's confidential disability-related medical information, one or more Human Resources employees used that information to ridicule, harass, demean, intimidate, or disparage Plaintiff, including by referring to Plaintiff as "retarded"; excluding Plaintiff from ordinary workplace interactions; impersonating Plaintiff in District systems and submitting or filing information incorrectly in her name; making or pursuing multiple unsubstantiated disciplinary allegations against Plaintiff; engaging in intimidating conduct, including standing or sitting directly outside Plaintiff's office, tossing papers at Plaintiff, towering over Plaintiff, or approaching her in an aggressive or menacing manner; spreading misinformation concerning Plaintiff, her work, or her conduct; making disparaging comments and intentionally embarrassing or humiliating Plaintiff; mocking or ridiculing Plaintiff's disability-related needs, limitations, or accommodations; characterizing Plaintiff's limitations or accommodations as unwillingness to work or lack of commitment;

encouraging or facilitating Plaintiff's isolation or ostracism; setting Plaintiff up to fail; repeatedly changing expectations or "moving the goalposts"; excessively micromanaging Plaintiff; singling Plaintiff out for disciplinary or retaliatory treatment; deliberately isolating Plaintiff; stripping Plaintiff of work, access, responsibilities, and meaningful job duties; and otherwise subjecting Plaintiff to differential, retaliatory, humiliating, and degrading treatment that created a hostile work environment.

49. The unauthorized access and use of Plaintiff's confidential medical information caused Plaintiff humiliation, distress, fear regarding the security of her medical information, and a more hostile and discriminatory work environment.

50. Defendant did not adequately investigate, correct, or discipline the employees who accessed or used Plaintiff's confidential disability-related medical information without authorization.

51. Instead, Defendant promoted two or more of the employees who accessed or used Plaintiff's confidential disability-related medical information.

52. Defendant's actions and omissions caused Plaintiff lost employment opportunities, economic losses, emotional distress, mental anguish, humiliation, inconvenience, and other damages.

## COUNT I
## ADA DISABILITY DISCRIMINATION
## FAILURE TO PROVIDE REASONABLE ACCOMMODATION
## 42 U.S.C. § 12112(a) and § 12112(b)(5)

53. Plaintiff realleges paragraphs 7-23, 26-27, 41(h) and 52.

54. Plaintiff is a qualified individual with a disability under the ADA.

55. Defendant knew of Plaintiff's disability and her disability-related limitations.

56. Plaintiff requested reasonable accommodations that would have enabled her to perform the essential functions of her position and enjoy equal employment opportunities.

57. Defendant failed to provide, consistently implement, or reasonably consider effective accommodations for Plaintiff's known disability-related limitations.

58. Defendant failed to engage in a good-faith, continuing interactive process concerning Plaintiff's known accommodation needs. Defendant's failure to engage in that process resulted in the denial, delay, or ineffective implementation of reasonable accommodations.

59. Defendant's failure to accommodate Plaintiff was not justified by undue hardship.

60. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages and is entitled to all remedies available under the ADA.

## COUNT II
## ADA DISABILITY DISCRIMINATION
## FAILURE TO PROMOTE AND DISCRIMINATORY TERMS, CONDITIONS, AND PRIVILEGES OF EMPLOYMENT
## 42 U.S.C. § 12112(a)

61. Plaintiff realleges paragraphs 7-19, 24-26, 28-39, 43-45, and 48-52.

62. Plaintiff is a qualified individual with a disability under the ADA.

63. Defendant discriminated against Plaintiff because of her disability by denying her promotion opportunities; transferring her; removing or restricting her duties, systems access, and work opportunities; excluding her from necessary work-related information and communications; permitting the unauthorized access and misuse of her disability-related medical information; and otherwise subjecting her to unequal terms, conditions, and privileges of employment.

64. Defendant's conduct adversely affected Plaintiff's employment opportunities, status, work environment, and conditions of employment.

65. Defendant selected other candidates for promotion despite Plaintiff's qualifications and experience.

66. Plaintiff's disability was a motivating factor in Defendant's decisions and treatment of Plaintiff.

67. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages and is entitled to all remedies available under the ADA.

**COUNT III**
**ADA RETALIATION**
**42 U.S.C. § 12203**

68. Plaintiff realleges paragraphs 7-17, 24-24, 28-39, 43-45, and 48-52.

69. Plaintiff engaged in protected activity by requesting disability accommodations, opposing disability discrimination, reporting unauthorized access to her confidential disability-related information, filing internal complaints and grievances, filing administrative charges, and otherwise exercising rights under the ADA.

70. Defendant knew Plaintiff engaged in protected activity.

71. Defendant thereafter subjected Plaintiff to materially adverse actions, including heightened scrutiny, continued failures to accommodate, restrictions on duties and systems access, exclusion from work-related information and communications, denial of promotion opportunities, transfer, and the additional actions identified in paragraph 41.

72. Defendant took those actions because Plaintiff requested accommodations, opposed disability discrimination, reported the confidentiality breach, filed complaints, and pursued her statutory rights.

73. Defendant's actions would dissuade a reasonable employee from requesting accommodations, reporting discrimination, reporting the misuse of confidential medical information, or otherwise opposing unlawful employment practices.

74. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered damages and is entitled to all remedies available under the ADA.

## COUNT IV
## ADA — IMPROPER DISCLOSURE AND FAILURE TO MAINTAIN CONFIDENTIAL MEDICAL INFORMATION
## 42 U.S.C. § 12112(d)(3)(B) and § 12112(d)(4)(C)

75. Plaintiff realleges paragraphs 7-9, 16, 20, 23-26, 28-29 33-41, 44-48 and 52.

76. Plaintiff provided Defendant medical and disability-related information in connection with her requests for reasonable accommodations and Defendant's accommodation process.

77. Defendant was required to maintain that information in separate confidential medical files and to treat it as a confidential medical record.

78. Defendant permitted Plaintiff's Human Resources peers to access Plaintiff's medical and disability-related information without a legitimate business need and outside the limited circumstances in which disclosure of such information is permitted.

79. The unauthorized employees accessed Plaintiff's confidential medical and disability-related information on the dates and in the manner reflected in Defendant's access logs.

80. One or more employees used information obtained from Plaintiff's confidential medical or disability-related records to ridicule, harass, demean, or otherwise mistreat Plaintiff.

81. Defendant failed to take adequate corrective action after Plaintiff reported the unauthorized access and misuse of her confidential medical and disability-related information.

82. As a direct and proximate result of Defendant's violation of the ADA's medical-information confidentiality requirements, Plaintiff suffered damages and is entitled to all remedies available under the ADA.

## COUNT V
## FLORIDA CIVIL RIGHTS ACT DISABILITY DISCRIMINATION
## FAILURE TO PROVIDE REASONABLE ACCOMMODATION
## Fla. Stat. § 760.10

83. Plaintiff realleges paragraphs 7-23, 26-27, 41(h), and 52.

84. Plaintiff is disabled or handicapped within the meaning of the FCRA.

85. Defendant knew of Plaintiff's disability and her need for reasonable accommodations.

86. Plaintiff requested reasonable accommodations that would have enabled her to perform the essential functions of her position and enjoy equal employment opportunities.

87. Defendant failed to provide, consistently implement, or reasonably consider effective accommodations for Plaintiff's known disability-related limitations.

88. Defendant failed to engage in a good-faith, continuing interactive process concerning Plaintiff's known accommodation needs. That failure resulted in the denial, delay, or ineffective implementation of reasonable accommodations.

89. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages and is entitled to relief under the FCRA.

## COUNT VI
## FLORIDA CIVIL RIGHTS ACT DISABILITY DISCRIMINATION
## FAILURE TO PROMOTE AND DISCRIMINATORY TERMS, CONDITIONS, AND PRIVILEGES OF EMPLOYMENT
## Fla. Stat. § 760.10

90. Plaintiff realleges paragraphs 7-19, 24-26, 28-39, 43-45, and 48-52.

91. Defendant discriminated against Plaintiff because of her disability by denying her promotion opportunities; transferring her; removing or restricting her duties, systems access, and work opportunities;

excluding her from necessary work-related information and communications; permitting the unauthorized access and misuse of her disability-related medical information; and otherwise subjecting her to unequal terms, conditions, and privileges of employment.

92. Defendant's conduct adversely affected Plaintiff's employment opportunities, status, work environment, and conditions of employment.

93. Defendant selected other candidates for promotion despite Plaintiff's qualifications and experience.

94. Plaintiff's disability was a motivating factor in Defendant's decisions and treatment of Plaintiff.

95. As a direct and proximate result of Defendant's conduct, Plaintiff suffered damages and is entitled to relief under Fla. Stat. §§ 760.10 and 760.11.

## COUNT VII
## FLORIDA CIVIL RIGHTS ACT RETALIATION
## Fla. Stat. § 760.10

96. Plaintiff realleges paragraphs 7-17, 19-21, 23-26, 28-29, 33-41, 44-48 and 52.

97. Plaintiff engaged in protected activity by requesting disability accommodations, opposing disability discrimination, reporting unauthorized access to her confidential disability-related information, filing

internal complaints and grievances, filing administrative charges, and otherwise exercising rights protected by the FCRA.

98. Defendant knew that Plaintiff had engaged in protected activity.

99. Defendant thereafter subjected Plaintiff to materially adverse actions, including heightened scrutiny, continued failures to accommodate, limitations on duties and systems access, exclusion from work-related information and communications, transfer, denial of promotion opportunities, and the additional actions identified in paragraph 41.

100. Defendant took those actions because Plaintiff requested accommodations, opposed disability discrimination, reported the confidentiality breach, filed complaints, and pursued her statutory rights.

101. Defendant's actions would dissuade a reasonable employee from opposing discrimination, reporting discriminatory conduct, reporting the misuse of confidential medical information, or seeking disability accommodations.

102. As a direct and proximate result of Defendant's retaliation, Plaintiff suffered

103. damages and is entitled to relief under Fla. Stat. §§ 760.10 and 760.11.

## Demand for Relief

WHEREFORE, Plaintiff Heather Thompson requests that the Court enter judgment in her favor and against Defendant, The School Board of Charlotte County, Florida, and award:

A. A declaration that Defendant violated the ADA and FCRA;

B. Temporary, preliminary, and permanent injunctive relief prohibiting discriminatory and retaliatory practices;

C. Injunctive relief requiring Defendant to maintain Plaintiff's disability-related medical information as confidential medical records, limit access to authorized personnel with a legitimate need to know, investigate unauthorized access, and take appropriate corrective action;

D. Reinstatement or restoration of Plaintiff's job duties, systems access, responsibilities, employment opportunities, and workplace status, or front pay in lieu of reinstatement or restoration where appropriate;

E. Back pay, lost wages, lost benefits, lost promotional opportunities, and other economic losses;

F. Compensatory damages, including damages for emotional distress, mental anguish, humiliation, inconvenience, and loss of dignity;

G. Prejudgment and post-judgment interest as permitted by law;

H. Reasonable attorney's fees and costs; and

I. Such other legal and equitable relief as the Court deems just and proper.

Jury Demand

Plaintiff demands trial by jury on all issues so triable.

Dated: September 27, 2026

Respectfully submitted,

MIHOK LAW
1401 East 22nd Avenue
Tampa, Florida 33605
(813) 248-6400
melissa@mihoklaw.us
Secondary:
jordan@mihoklaw.us

Attorney for Plaintiff



Melissa C. Mihok, Esq.
Florida Bar No. 555851